Estate of Aline Peters Peters, Late of Morristown, Vermont, Frank Peters Moore and Graham Crawford Thomson, Executors v. Commissioner.
Estate of Peters v. Comm'r
Docket No. 105-63. United States Tax Court
T.C. Memo 1964-167; 1964 Tax Ct. Memo LEXIS 170; 23 T.C.M. (CCH) 994; June 18, 1964
Paul N. Olson, P.O. Box 543, Brattleboro, Vt. and John A. Rocray, for the petitioner. Robert B. Dugan, for the respondent. RAUM
Memorandum Opinion RAUM, Judge: Respondent determined a deficiency in estate tax in the amount of $82,941.82. The principal issue is whether certain powers retained by decedent over a trust *171 created by her required the inclusion of the value of the trust property in her gross estate. The facts have been stipulated. Aline P. Peters died testate on January 12, 1960, a resident of Vermont. On June 14, 1951, decedent, then domiciled in Connecticut, created a trust and transferred to the trustees "irrevocably and in trust" various corporate securities. Under the terms of the instrument her daughter and three grandchildren were to receive equal shares of the net income of the trust property during the life of each, and upon the death of the survivor of them the corpus was to be distributed per stirpes to her great-grandchildren. The trust instrument provided, in part, as follows: I. The trustees under this Declaration of Trust shall be: a. The donor, Aline P. Peters, The First National Bank in Greenwich, Conn., and Frank H. Wright, of Great Barrington, Massachusetts. Provided however, that during the life time of the donor, neither the First National Bank in Greenwich nor Frank H. Wright, shall be deemed to have accepted or assumed either the de jure or de facto office of trustee hereunder until said donor shall have executed and delivered to it or to him respectively, *172 her written and irrevocable renunciation of the right, hereinafter reserved to her, of exercising sole discretion in the management and investment of corpus hereof; * * * b. The donor, Aline P. Peters, should she elect so to do, shall have sole discretion in the management and investment of the corpus of this trust, for and during the period of her natural life time, or until she shall resign or decline to further carry on said trust, and during the period when the said donor shall have and exercise sole discretion in the management and investment of the corpus of this trust the remaining trustees namely, The First National Bank in Greenwich and Frank H. Wright, shall not be deemed to have accepted or assumed either the de jure or de facto office of trustees hereunder. c. In the event that the donor Aline P. Peters elects to carry on the management and investment of said trust as hereinabove provided, said First National Bank in Greenwich shall act as custodian thereof, subject to the directions of said donor as to management and investment only. Said First National Bank in Greenwich shall act only as the custodian of the trustees and not as a trustee, of the corpus thereof, subject *173 to, but wholly without either responsibility or liability for or because of, the directions of said donor and the trustees as to management, investment and any and all other nondelegable duties of administration. * * *
II. The trustees, and any substitute or successor trustees, shall hold the corpus of said trust during the joint lives of the below named beneficiaries and the survivors of them, and during the lifetime of the survivor of them, shall invest, reinvest and keep invested the corpus thereof, and shall pay over the net income therefrom (at convenient intervals but not less frequently than quarter-annually) to the beneficiaries * * * during the lifetime of each * * *: * * *
III. Said donor directs that the income from said trust shall not be accumulated but shall be paid over as directed without accumulation beyond the intervals set for payment thereof. IV. Insofar as permitted by law now or hereafter existing and now or hereafter applicable to the following, the Donor hereby directs that distributions of income or principal as provided for under this trust agreement shall not be subject to review by any Court. Insofar as permitted by law now or hereafter existing *174 and now or hereafter applicable to the following, the Donor also hereby directs and provides that in case any action shall be brought by any person or in behalf of any person having, or given any interest in either the income or principal of this trust seeking to direct any distribution thereof, then and in that case such person or persons shall forfeit any income or principal provision made for them in this agreement and said trust fund shall thereafter be administered without reference to said person or persons. V. The Donor also hereby directs that receipts in the hands of said trustees evidencing payments as provided for under this trust agreement shall be sufficient in whatever form they may be and in the absence of fraud or gross negligence, shall constitute a full discharge of said trustees. * * *
VII. The Donor hereby reserves the right to add to this trust fund by simple transfer, either securities, cash or other intangible personalty or real property, should she desire so to do. VIII. The said Donor directs that in addition to and not in limitation of, any or all of the powers hereinbefore granted to the trustees and all other powers which the said trustees *175 may be entitled to exercise under the law, the said trustees shall have the following powers: a. To retain as a portion of the trust fund any property or investment deposited by the donor hereunder and to invest and re-invest the trust fund in any stocks, notes, bonds, mortgages or other securities or property of any kind or nature whatsoever, including any real estate or any interest therein, in the trustees' absolute discretion notwithstanding said securities or property may not be of a character prescribed by law or rules of court for the investment of trust funds; and to change any investment received or made by the trustees, bearing in mind that the Donor is interested in preserving principal. b. The power to sell real estate and to grant options for the sale thereof without first obtaining any license from any court of law. c. The right to exercise all conversion, subscription, and voting rights respecting trust property, and to grant proxies discretionary or otherwise. * * *
e. The right to determine what is income and what is prinicpal and the right to refrain from amortizing premiums on any bonds or preferred stocks held or purchased by it. f. The right to compromise *176 and pay any tax claims or other actions against the trust estate if such action appears in the best interest of the heirs of the Donor. * * *
h. In making a division or divisions of property among beneficiaries the values determined by the trustees shall be final and binding on all parties at interest at that time or in the future, and shall not be subject to review by any court. i. The said trustees shall be empowered to distribute in cash or in kind. * * *
k. After the death of the Donor all trustees shall render an accounting annually to the beneficiaries. * * *
From the time of the creation of the trust on June 14, 1951 until January 12, 1960, the date of decedent's death, she acted as sole trustee and did not exercise the right reserved to her to execute and deliver an irrevocable renunciation of the right of exercising sole discretion in the management and investment of the trust property. During that period the First National Bank in Greenwich, Connecticut, and its successor in fact, The Fairfield County Trust Company, acted as custodian of the trust property, rendering semi-annual and, beginning in 1959, quarterly statements showing principal and income receipts *177 and disbursements, other transactions and changes, and also statements of investments held at inventory value at least annually to the donor. The Bank as custodian also made quarterly distributions of income to the life beneficiaries and furnished each of them annually with statements showing income reportable by them in their income tax returns. No court accounting was made by the decedent as trustee during her lifetime. An accounting of decedent's management of the trust property was prepared and filed with the Probate Court for the District of Lamoille, Vermont, by the executors of her will and was allowed by the court on January 30, 1962. It shows that during the course of decedent's administration of the trust changes in the trust property resulted primarily from stock dividends, stock splits, redemptions of preferred stock, sales of stock rights and fractional shares, and a small number of purchases of additional shares. In the Estate Tax Return the executors elected to have the estate valued as of the date of decedent's death. Although the existence of the June 14, 1951 trust was reported in Schedule G of that return, no value was included in the gross estate on account *178 of that trust. The fair market value of the property held in the trust as of the date of decedent's death was $223,278.62. In the notice of deficiency the Commissioner determined that that amount was includable in the gross estate of decedent. The Commissioner refers to Sections 2036(a)(2) and 2038(a)(1) of the 1954 Code [1] as authority for the inclusion of the trust in the decedent's gross estate. He relies upon either or both of these sections. *179 The decedent's original transfer of the securities was stated in the trust instrument to have been made "irrevocably", and there is no contention that she in terms reserved any power to alter, amend, revoke, or terminate, or to designate who shall posses or enjoy the property or the income therefrom. Rather, it is the Commissioner's position that the powers of management retained by the decedent in her capacity as trustee were so sweeping that they in effect gave her the ability to shift the possession or enjoyment of the trust property among the beneficiaries, thereby making applicable either or both of the foregoing statutory provisions. Although he quite properly bases his argument upon all of the retained powers, considered as a whole, he places particular emphasis upon the power to invest and re-invest in securities or property of any kind "in the trustees' absolute discretion notwithstanding said securities or property may not be of a character prescribed by law * * * for the investment of trust funds", and the "right to determine what is income and what is principal." And he relies primarily upon (C.A. 1). *180 The majority opinion in that case referred to it as "very close" (p. 638), and we think that the present case is not ruled by the result reached there upon the unusual facts that were before the Court. Each of the three trusts in State Street contained the following provisions in respect of the retained powers of the donor-trustee (): In addition to and not in limitation of all common law and statutory authority, the Trustees shall have power * * * to exchange property for other property; * * * to retain and invest and reinvest in securities or properties although of a kind or in an amount which ordinarily would not be considered suitable for a trust investment, including, but without restriction, investments that yield a high rate of income or no income at all and wasting investments, intending hereby to authorize the Trustees to act in such manner as it is believed by them to be for the best interests of the Trust Fund, regarding it as a whole, even though particular investments might not otherwise be proper; * * * to determine what shall be charged or credited to income and what to principal notwithstanding any determination by the courts and *181 specifically, but without limitation, to make such determination in regard to stock and cash dividends, rights, and all other receipts in respect of the ownership of stock and to decide whether or not to make deductions from income for depreciation, amortization or waste and in what amount; * * * and generally to do all things in relation to the Trust Fund which I, the Donor, could do if living and the Trust had not been executed. * * *
* * * All such acts and decisions made by the Trustees in good faith shall be conclusive on all parties at interest and my Trustees shall be liable only for their own wilful acts or defaults, but in no case for acts in error of judgment. The Court of Appeals rejected at the outset the power to invest in property other than "legals" and the mere power to allocate between principal and interest as the basis for including the trusts in the decedent's gross estate (): It is true that it is not at all unusual to clothe trustees with power to invest trust assets in securities other than socalled "legals." And it is also true that it is far from uncommon to provide that trustees shall have the power in their discretion *182 to allocate accretions to the property they hold in trust to principal or to income, at least when there is no settled rule of law to apply and proper allocation is open to honest doubt. Certainly in the exercise of one or both of these powers trustees can to some extent affect the interests of the various beneficiaries. Indeed, even in a trust wherein investment is limited to "legals", a trustee can effect some shifting of benefits between life beneficiaries and remaindermen by his choice of investment with respect to rate of income return or growth potential. But we would hardly suppose that in the ordinary case inclusion of one or both of the above provisions in a trust instrument would be a crucial factor in deciding whether or not the corpus of the trust should be included in a decedent's estate. However, the court went on to hold that the extraordinary powers reserved in that case were to be treated as coming within the statute. In describing those powers, it said (): This, however, is not an ordinary case. Literally, the trustees have power to exchange trust property for other property without reference to the value of the properties involved *183 in the exchange. And literally, they have power to invest the trust assets in securities yielding either a high rate of income or no income at all, and even in wasting investments, and they have power to invest trust assets in these categories in whatever amounts they choose without limitation with respect to the percentage of the trust corpus invested in any one of them. Moreover, the trustees' discretionary power to allocate trust assets to corpus or income is not limited to situations where the law is unsettled and there is honest doubt whether a given accretion or receipt should be classified as capital or income. * * * Indeed the trustees' power of allocation does not seem even to be limited to accretions or receipts but would appear to extend in terms to any item of trust property. Futhermore, the trustees may make deductions from income for depreciation, amortization or waste in whatever amounts they see fit. * * *
We think that the powers of management reserved by the decedent herein, though broad indeed, were not such as to bring into play the exceptional rule of the State Street case, and that the trust was not includable in the decedent's gross estate. Cf. ; *184 (C.A. 10). Deductions from the gross estate allowable for administration expenses and probate fees in addition to those allowed by respondent, and deductions allowable for expenses incurred in connection with proceedings in this Court, will be determined in connection with the recomputation under Rule 50. Decision will be entered under Rule 50. Footnotes
1. SEC. 2036. TRANSFERS TAKING EFFECT AT DEATH. (a) General Rule. - The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time * * * made a transfer * * * by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death - * * *
(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom. SEC. 2038. REVOCABLE TRANSFERS. (a) In General. - The value of the gross estate shall include the value of all property * * * (1) * * * To the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone * * * to alter, amend, revoke, or terminate * * *.↩